PETER C. WOLFF, JR.  #2332
Federal Public Defender
District of Hawaii

ALEXANDER SILVERT
First Assistant Federal Defender
300 Ala Moana Boulevard, Suite 7104
Honolulu, Hawaii   96850-5269

Telephone:  (808) 541-2521
Facsimile:  (808) 541-3545
E-Mail:     alexander_silvert@fd.org

Attorney for Defendant
SHANE RODRIGUES

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) CR. NO. 00-00471 SOM |
| | ) |
| Plaintiff, | ) OBJECTION TO VIOLATION |
| | ) NUMBERS 1-5; DECLARATION |
| vs. | ) OF COUNSEL; EXHIBITS A-D; |
| | ) CERTIFICATE OF SERVICE |
| SHANE RODRIGUES, | ) |
| | ) |
| Defendant. | ) |
| | ) |

**OBJECTION TO VIOLATION NUMBERS 1-5**

Defendant, SHANE RODRIGUES, by and through undersigned counsel, Alexander Silvert, First Assistant Federal Defender, objects to the

defendant having to admit or deny violation numbers 1-5 as contained in the Alleged Violation(s) of Supervised Release dated November 8, 2006.

## I.   PROCEDURAL HISTORY

As the Court is aware, Mr. Rodrigues was originally convicted of bank robbery and served a sentence of incarceration of 37 months. He was also ordered to pay restitution. Mr. Rodrigues began to serve his three year term of supervised release on May 21, 2004.

On January 25, 2005, Probation Officer Frank Condello moved to modify the terms of Mr. Rodrigues' supervised release conditions by adding a new condition that Mr. Rodrigues perform 24 hours of community service. The reason cited for adding this new punitive condition was because Mr. Rodrigues improperly incurred a line-of-credit to purchase a vehicle to drive to work - so that he could pay off his restitution - without the permission of his probation officer. Mr. Rodrigues had also missed three drug testing appointments (8/20/04, 9/27/04, and 10/11/04). The Court agreed with the recommended course of action and Mr. Rodrigues, Mr. Condello, *and the Court* signed a contract (Probation Form 12B) memorializing the parties' agreement to this new supervised release condition. [Attached as Exhibit "A"]. Importantly, no time frame for completion of the new condition of community service was noted by the Court.

On July 15, 2005, a second modification order was agreed to by the Court. That petition noted that Mr. Rodrigues had tested positive for cocaine (5/31/05); admitted using cocaine (6/24/05); missed one drug testing appointment (6/24/05); and failed to make restitution payments for the months of February, March and April of 2005. Although it was noted that Mr. Rodrigues suffered a serious hand injury in April of 2005 and was unable to work, the Probation Officer noted that Mr. Rodrigues received disability insurance payments for his injury and he should have made restitution payments based upon that income.

Despite these alleged violations, the Probation Officer recommended, and the Court agreed, to further modify Mr. Rodrigues' conditions of supervised release by adding a new punitive condition of two months home detention with electronic monitoring. Again, the defendant, the Probation Officer, *and the Court* signed a contract (Probation Form 12B) agreeing to this modification. [Attached as Exhibit "B"]. Mr. Rodrigues performed and successfully completed his two month term of supervised release.[1]

---

[1] In addition to the alleged violations as listed in the July 15th report, the report also noted the prior history of violations as noted in the January 25, 2005, report. As a result of all of these alleged violations, the Probation Officer, and the Court, elected to modify Mr. Rodrigues' conditions of supervised release by adding the two month term of home confinement.

On February 15, 2006, a third modification request was submitted and signed by the Court. Allegedly, Mr. Rodrigues had failed to abide by three conditions on various dates: (1) Mr. Rodrigues admitted using cocaine on two occasions (7/9/05) and (2/1/06); (2) Mr. Rodrigues missed several more drug testing appointments (12/7/05), (12/26/05), and (2/1/06); and (3) Mr. Rodrigues failed to make monthly restitution payments for the months of June, July, August, October, November of 2005, and January of 2006. During this time period, it was noted that Mr. Rodrigues had attempted suicide due to his depression over losing his girlfriend and as a result of the severe injury to his hand that he had suffered in April of 2005. Mr. Rodrigues was referred to Dr. Choy for psychological services.

On February 13, 2006, the defendant, the Probation Department, and the Court entered into a contract whereby all parties agreed to modify Mr. Rodrigues' conditions of supervised release by adding an additional punitive term of two months placement at Mahoney Hale, a half-way house facility operated by the Bureau of Prisons. [See attached Exhibit "C"].

Finally, on November 8, 2006, the Probation Department filed a Request for Action Notice seeking the Court to hold a Supervised Release Violation Hearing. In listing the violations upon which the defendant would have

to respond and upon which the Court could base its decision, seven violations are listed.

(1)  The first cites the alleged improper line-of-credit that was obtained by Mr. Rodrigues in 2004 to purchase a car so that he could drive to work to earn income to live on and to pay restitution.  This alleged violation was the subject of the first modification agreement.

(2)  The second lists Mr. Rodrigues' alleged failure to complete his 24 hours of community service that was imposed on January 25, 2005, as part of the first modification agreement, even though the Court did not impose any time table and even though this alleged failure to perform was also taken into account when the Court imposed the two month term of community confinement as agreed to in the third modification contract.

(3)  The third alleged violation lists the three alleged positive urine samples (5/31/05), (6/28/05), and (2/2/05).  The first two alleged violations were the subject of the second modification agreement while the last alleged violation was the subject of the third modification agreement.  No more positive drug tests have occurred since the third modification agreement in February, 2006.

(4)  The fourth alleged violation lists Mr. Rodrigues' admission that he used cocaine on 7/9/05, which was the subject of the second modification

5

agreement. No reoccurrence of drug use is noted in the present violation notice.

(5) The fifth violation notice lists Mr. Rodrigues' missed drug testing appointments, (8/20/04), (9/27/04), (10/11/04), (6/24/05), (12/7/05), (12/26/05), and (2/1/06). The first three missed appointments were subject to the first modification agreement, the June 2005 missed appointment was subject to the second modification agreement, and the last three missed appointments were subject to the February 13, 2006, modification agreement. No missed appointments are listed since the last modification agreement in the new violation notice. Nor does the new violation notice list the multitude of drug tests that Mr. Rodrigues made since his release in May of 2004, only the seven he has missed over the last two years which have all been the subject of increased punitive punishment.

(6) The sixth violation lists the months that Mr. Rodrigues missed his restitution payments. Although many of these missed restitution payments were subject to prior modification agreements, since this is one of only two on-going violations that has continued since the third modification agreement, Mr. Rodrigues will admit this violation despite his many months of having made efforts to pay restitution and despite his serious hand injury which has led to his loss of work and to psychological depression for which treatment was necessary.

(7) The seventh violation lists the months that Mr. Rodrigues failed to file monthly reports. This has been a relatively new occurrence, apparently having only started in 2006 with no such events in either 2004 or 2005. Again, since this is a new, on-going occurrence, Mr. Rodrigues will admit this violation.

## II.   ARGUMENT

At issue is whether or not, given the circumstances of this case, the Court can legally violate Mr. Rodrigues for alleged violations that were (1) subject to prior modification agreements whereby increased punitive conditions were imposed; (2) where Mr. Rodrigues has performed pursuant to the terms and conditions of the modification agreement; and (3) where Mr. Rodrigues has not committed any of the same violations since the modification agreement and his performance of the terms of the agreement have been satisfied. It should be noted that since the February 2006 modification agreement/contract, the only new violations alleged are that Mr. Rodrigues failed to pay restitution on a monthly basis and did not file his monthly reports on time. Mr. Rodrigues, apparently, is making all of his drug testing appointments and is testing negative for drug use. Despite the fact that Mr. Rodrigues was subject to increased punishment for his past drug use and past missed drug testing appointments, and despite the fact that Mr. Rodrigues seems to be in full compliance with these conditions of supervised

release since he was punished in February 2006 for his non-compliance, these very same past violations are now being dredged up to form a basis for three of the listed violations even though he has not violated these conditions since the modification order was entered and performance completed.[2]

      Mr. Rodrigues submits that the modification agreements are, in fact, contracts. Each modification agreement listed a series of alleged violations as previously listed noted. As specifically noted in these agreements, Mr. Rodrigues waived his right to a hearing, waived his right to counsel, *and agreed* to have the Court impose additional punitive supervised release conditions -- conditions which were not part of his original sentence. In return, the Probation Department, as evidenced by Mr. Condello's signature, *and the Court*, as evidenced by the Court's signature, increased Mr. Rodrigues' punishment by adding a new condition: two months of home confinement with electronic monitoring in one instance and two months in a half-way house in the last instance.

---

[2] Mr. Rodrigues submits that he cannot be violated for having failed to perform 24 hours of community service for two reasons. First, this alleged failure to perform formed part of the basis of the violations which led to his serving two months in community confinement. Second, and of more import, no time limit was set by the Court for when such service had to be complete. Has such, it is premature to find that Mr. Rodrigues has not fulfilled this obligation.

Mr. Rodrigues has successfully completed serving both the added conditions of home confinement and community confinement. Moreover, according to the November 8th report, Mr. Rodrigues has not committed any new violations regarding testing positive for drugs and/or missing a drug testing appointment. As such, it appears that the course of action followed by the Court - in adding the punitive conditions to force Mr. Rodrigues to stop using drugs and/or missing drug testing appointments - has succeeded.[3] More importantly, however, is that the parties entered into a contract and Mr. Rodrigues successfully performed his end of the bargain. Now, however, the Probation Department, due to alleged violations and behavior that are separate and distinct from the behavior for which Mr. Rodrigues was previously punished and for which he has continued to perform successfully, wishes not to hold up its end of the bargain by using the

---

[3] Attached Exhibit "D" is a four-page colored time-chart listing the various violations and types of violations leading up to the present violation notice. Page one represents the allegations leading up to the first modification agreement. Page two represents the new allegations leading up to the second modification agreement. Page three represents the new allegations leading up to the third modification agreement. And page four represents the new allegations which have led to the filing of the present violation notice. As the Court can plainly see, since the third modification agreement, the only new alleged violations are that Mr. Rodrigues has not been paying restitution on a monthly basis and has not filed his monthly reports on time as required. He has conformed his behavior in every other respect.

very same violations which formed the basis of the modification/contract.[4]  Mr. Rodrigues has performed as required and has not continued in the same type of misbehavior.  As such, this Court, having bound itself to the modification agreements, should live up to its end of the agreement.

      Mr. Rodrigues has not found a case directly on point.  However, a contract is a contract, however the agreement is captioned.  As this Court has previously held, Local Rule 16, which requires the government to provide discovery within a certain set number of days, and, which also requires the defense to provide reciprocal discovery if the defense does not affirmatively opt out of the requirements of Local Rule 16, is a contract merely upon the government's act of providing discovery pursuant to the rule.  Once the government has provided the discovery, according to the Court, the government has performed and the contract - Local Rule 16 - is complete, requiring the defense to provide reciprocal discovery.

---

[4] Mr. Rodrigues does not argue that, should the Court find Mr. Rodrigues in violation of supervised release based upon his admissions to allegations numbers 6 and 7, that the Court is prohibited from taking into account the totality of Mr. Rodrigues' behavior on supervised release, including his behavior which was the subject of past modification agreements.  Rather, only that due process, collateral estoppel, and principles of fundamental fairness prevent the Court, on this record, from violating Mr. Rodrigues on events which were the subject of prior modifications and for which Mr. Rodrigues has not violated again in the same manner.

Here, Mr. Rodrigues, pursuant to Probation Form 12B, waived his right to counsel, waived his right to a hearing, and *agreed* to have his conditions of supervised release *increased* - either by way of home detention and/or community confinement.  In return, this Court, and the Probation Department (perhaps one in the same?) - having reviewed the listed violations pertaining to each modification request, accepted Mr. Rodrigues' offer and imposed a new condition, a new punitive condition, of supervised release.  Based upon this agreement, as evidenced by the signed forms  - which certainly look like a contract - Mr. Rodrigues performed as required.  Most importantly, since the third modification agreement/contract, Mr. Rodrigues has continued to comply with his agreement not to use drugs and not to miss appointments.  Accordingly, Mr. Rodrigues submits that his past behavior regarding these particular types of misconduct should not now form the basis of a violation.  They can, of course, be considered in the totality of his conduct should the Court find him in violation of other conditions of supervised release.  Had, on the other hand, Mr. Rodrigues used drugs again and/or missed more drug testing appointments, then Mr. Rodrigues would agree that he could be violated on all of his past behavior in this

regard since he has, himself, broken the terms of the agreement by his own misconduct.[5]

In <u>United States v. Shampang</u>, 987 F.2d 1439 (9th Cir. 1993), one of the few cases to address the issue raised herein, a defendant, who had been the subject of a modification order wherein he was placed in an in-patient drug treatment program in lieu of being violated, argued that the Court was estopped from subsequently violating him as a result of the modification agreement. The Ninth Circuit did not agree with this argument. <u>Id.</u> at 1443-44. The Court, in <u>Shampang</u>, however, did not address the contract argument being made here as it was not raised. More importantly, however, is that the facts in <u>Shampang</u> are totally distinguishable. In <u>Shampang</u>, *after* the defendant had completed his in-patient drug treatment program, he committed new violations consisting of

---

[5] Let us assume the following scenario - Mr. Rodrigues successfully completed his two-month term of community confinement pursuant to a modification agreement and did not violate any of the conditions of his supervised release in any manner for the next 12 months. Then, for whatever whimsical reason, the Probation Department filed a Violation Notice that only contained the violations that occurred prior to the modification order. According to the Probation Department, such an action is entirely legal - although, admittedly, the Court may not choose to take adverse action. Nevertheless, unless modification agreements are viewed as contracts, according to the Probation Department, such a course of action would be permissible since nothing legally could stop a Probation Officer, or a Court, from simply changing their mind. Mr. Rodrigues submits that such a legal result cannot withstand judicial scrutiny.

continued drug and alcohol use.  As such, even Mr. Rodrigues would agree that the contract was broken by the defendant's own misconduct wherein he committed the same illegal behavior which formed the basis of his modification agreement.[6] Moreover, in Shampang, there is no evidence that *the court* agreed to the modification agreement which sent Shampang to an in-patient drug treatment program in lieu of an immediate violation hearing.  Rather, the record seems to indicate the exact opposite, that the agreement was simply an informal agreement between the probation officer and Shampang.  Id. at 1444.  That is not the case here.

      Mr. Rodrigues is not suggesting that the Court should not, in the future, should it rule in his favor, never again agree to modification agreements in lieu of simply violating a defendant every time a defendant is alleged to have committed a transgression of his/her supervised release condition.  Rather, all Mr. Rodrigues is stating is that if a defendant, pursuant to a modification agreement,

---

[6] In United States v. Kindred, 918 F.2d 485 (9th Cir. 1990), the defendant also raised the question of whether past conduct which had been addressed by a modification order could form the basis of a new violation petition.  However, as in the Shampang case, the defendant committed further violation acts that were the same as the acts which had formed the basis of the modification agreement.  As such, it does not address the factual or legal scenario presented here.  See also United States v. Ortiz, 185 Fed. Appx. 651 (9th Cir. 2006)(modification agreement did not prevent listing old violations because defendant committed same acts again).

successfully conforms his/her behavior as required and as agreed to, and thereby meet the requirements of the agreement, that the acts which led to the modification agreement not form the basis of a new violation. They can, of course, be considered in the totality should the Court find another basis upon which to violate the defendant. Such a result is fair. It is just. And it is consistent with contract law. As the Ninth Circuit has stated, citing to Supreme Court law:

> Probation programs are a valuable component of our criminal justice system. The decision to place a defendant on probation represents a conclusion that the defendant will benefit from supervision and treatment conceived to help that individual become a constructive member of society. Accordingly, the Supreme Court has held that the decision to revoke that probation should not be undertaken lightly. It should be taken 'only as a last resort when treatment has failed or is about to fail.'

United States v. Simmons, 812 F.2d 561, 567 (9th Cir. 1987)(internal citations omitted). Mr. Rodrigues submits that this Courts' prior leniency in permitting him, by agreement, to serve home confinement and to do a stint in a community confinement program has served its purpose and is, in fact, making him a productive member of society. It was the right decision. He no longer uses drugs. He no longer is missing his drug testing appointments. That is positive. That is a huge step in the right direction. Mr. Rodrigues can and will bring himself into conformity with the report filing requirement and with paying restitution as best he

can.  Mr. Rodrigues is asking that, in light of progress, the Court permit him to continue on supervised release.

DATED:   Honolulu, Hawaii, November 24, 2006.

  /s/ Alexander Silvert
ALEXANDER SILVERT
Attorney for Defendant
SHANE RODRIGUES

# CERTIFICATE OF SERVICE

ALEXANDER SILVERT, hereby certifies that on the date and by the method of service noted below, a true and correct copy of the foregoing was served on the following at the last known address on November 24, 2006:

Served Electronically through CM/ECF:

LAWRENCE L. TONG
Assistant United States Attorney
　　Attorney for Plaintiff
　　　UNITED STATES OF AMERICA


　　　　　　　　　　　　　　　　/s/ Alexander Silvert
　　　　　　　　　　　　　　　　ALEXANDER SILVERT
　　　　　　　　　　　　　　　　Attorney for Defendant
　　　　　　　　　　　　　　　　SHANE RODRIGUES